## DALL *vs.* KIMBALL.

Under *Stat.* 1821, *ch.* 135, parish taxes can be assessed only on the polls and property of members of the parish.

The *Stat.* 1786, *ch.* 10, is no longer in force in this State, its subject matter having been revised in *Stat.* 1821, *ch.* 135.

THIS case, which was decided in *June* term, 1826, and was unavoidably omitted in the cases of that year, was a writ of entry brought to recover two lots of land in *Bangor*, and was tried upon the general issue. The demandant's title was derived under deeds from *James Drummond* and *John Miller*, conveying the premises to him prior to the year 1820. Neither the demandant nor his grantors were inhabitants of *Bangor*.

The tenant claimed title to the premises under a deed from *John Barker*, collector of parish taxes in *Bangor* for the year 1823, by virtue of a sale of these lots as nonresident's property, for nonpayment of parish taxes, assessed upon them as belonging to *John Miller & Co.* for that year.

It appeared that the minister was originally settled by the town, acting as a territorial parish; that his salary, which was 800 dollars *per annum*, had not been raised in the year 1822; and that at a meeting of the inhabitants of the town qualified to vote in parish affairs, called by the assessors of the town in *April* 1823, the sum of 840 dollars was voted for the salary of 1822 in arrear, and 800 dollars more for the salary due in 1823; which, with other sums raised

at the same meeting for parish charges, were duly assessed by certain assessors, chosen at that meeting, pursuant to an article in the warrant, as parish assessors.

Upon this evidence the demandant objected—1st. That the lands of nonresident proprietors were not liable to be assessed for parish taxes.—2d. That the parish meeting was illegal, being called by the assessors of the town, neither of whom was a member of the parish:—3d. That if, by construction of law, the society was a territorial parish, coextensive with the municipal corporation, the tax should have been made by the assessors of the town:—4th. That the vote and assessment of two years' salary at once, was illegal:—5th. That the sum voted as salary for the year 1822 was larger than was due:—6th. That the tax was assessed to *John Miller & Co.* who were not owners of the land. And a verdict was taken for the tenant, by consent, subject to the opinion of the court upon the question whether, upon the evidence, his title was maintained.

*J. McGaw* and *Williamson*, for the tenant, being called on by the court to answer the first objection, argued that the minister was settled, under the law of Massachusetts, in pursuance of the obligation resting, by statute, on the *town*; that his contract was with the town as a municipal corporation, in which capacity it was bound; that this obligation of the town was not affected by any statute, of that State or of this, fixing or changing the qualifications of voters in parochial affairs, nor was the contract to be impaired by changing or diminishing the fund out of which the salary was to be paid. At the time of making the contract, the lands of nonresidents within the town were bound for its performance, by the laws then in force; and to construe our statute (1821 *ch.* 135,) as relieving them from the liability to be taxed in any case for parish charges, is, in cases like the present, to take away vested rights. Had the minister sued for his salary, the action must have been against the *town*; his execution might have been levied on the property of any citizen, whether of the parish or not; the citizen in his turn, might have had a judgment against the town for money laid out and expended; and this sum could be reimbursed only by a general assessment, as in the case of other town debts. The *Stat.* 1786, *ch.* 10, moreover, is not repeal-

Dall *v.* Kimball.

ed, either by express words, or by implication ; and by this statute, taxes granted for parochial purposes are to be assessed on all the polls and property within the territorial limits of the parish.

And wherever monies are to be raised for which the town is liable to be taxed, the meeting should be called by the town officers, in the same manner as other town meetings ; but the assessment being a parochial act, it was proper that the money should be assessed only by members of the parish, specially chosen for that purpose. *Minot v. Curtis,* 7 *Mass.* 441.

Upon principle also, they contended, there was the same propriety in taxing nonresidents for the support of public worship, as for schools. *Amesbury Nail Factory Co. v. Weed,* 17 *Mass.* 53.

And they insisted that the parish-act of this State did not affect existing parishes, but only provided for the formation of new ones.

*Gilman* for the demandant.

PREBLE J. delivered the opinion of the Court.

Several questions have been reserved in this case for the consideration of the court, and have been discussed in argument by the respective counsel. The decision of the court, now about to be pronounced, refers to one of those questions only, as the view we have taken of that one is decisive of the case at bar.

By the statute entitled " An Act concerning parishes," passed *March* 13, 1821, *ch.* 135, *sect.* 6, it is provided that every parish may grant and vote money for the support of the public ministry of religion, &c. and may assess the same on the polls and estates of the several members thereof. From the report of the Judge who presided at the trial, it appears that the demanded premises are unimproved lands within the town of *Bangor,* that the demandant who is not an inhabitant of this State, but a resident in *Boston,* in *Massachusetts,* became the sole proprietor of the premises in 1819, and that the expense incurred by the parish in *Bangor,* to defray which the tax in 1823 was voted and assessed, was not incurred until 1822 and 1823, during all which period the demandant was not a member of the parish. Upon comparing the third section of the statute of

1786 and the subsequent statutes of *Massachusetts* relating to parishes and religious societies, with the provisions of the statute of this State already referred to, we cannot doubt that the latter was intended as a revision of the former, and that although by the third section of the statute of 1786, the taxes granted and voted are " to be assessed on the polls and property within the territorial limits of the parish," yet under our statute it was manifestly the intention of the legislature to restrain the right of taxation in a parish upon polls and property, to the polls and property of its members. The verdict therefore must be set aside and a new trial granted.